**N.W., and D.W., Minors, by their Mother and Natural Guardian, J.W., Appellants,**

**v.**

**Buford ANDERSON, et al., Respondents.**

**No. C1–91–1153.**

Court of Appeals of Minnesota.

Dec. 24, 1991.

Review Denied Feb. 10, 1992.

Terrence M. Walters, Walters & Wintering, Ltd., Rochester, for appellants.

Ken D. Schueler, Dunlap, Finseth, Berndt & Sandberg, P.A., Rochester, for respondents.

Considered and decided by HUSPENI, P.J., and AMUNDSON and FLEMING,* JJ.

OPINION

AMUNDSON, Judge.

Appellants challenge the trial court's grant of summary judgment dismissing their action. Appellants argue respondents' negligence in failing to warn them of a known child molester resulted in the sexual assault of one of the minor appellants. We affirm.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## FACTS

Everett Bearbower was convicted of criminal sexual conduct for an offense against a young female child in 1986. In May 1988 Bearbower moved into a vacant trailer located on a farm owned by respondents Buford and Debra Anderson. Bearbower did not pay rent but he occasionally helped out with chores around the farm.

The Andersons testified by deposition that they knew Bearbower had been convicted of criminal sexual conduct prior to his moving on the farm by reading about the incident in the local newspaper. They had learned the victim of the assault was a pre-teen girl through other people. Before Bearbower moved on the farm, the Andersons spoke with Bearbower's probation officer who indicated Bearbower was trustworthy and did not warn them about any specific behavior. The Andersons also testified they were not aware that one of the terms of Bearbower's probation was to have no unsupervised contact with children. The Andersons stated they did not know Bearbower was a danger to any person, including children.

In July 1989, appellants rented a house on the Andersons' farm. Appellants' family included a seven-year-old boy, D.W., a five-year-old girl, N.W., and their mother, J.W. Bearbower kept rabbits at his trailer which attracted the children to play there every day. J.W. was unaware of Bearbower's sexual assault conviction.

Before renting the Anderson's house, J.W. testified that she asked Mr. Anderson how Bearbower was around children; he replied, "great [Bearbower] loves children, he has candy and stuff, children seem to love him." Mr. Anderson denied making this statement.

The Andersons admit they never told J.W. that Bearbower had been convicted of a sexual assault against a child. Mrs. Anderson testified that J.W. asked her if Bearbower was on probation and she replied "yes." When J.W. asked why Bearbower was on probation, Mrs. Anderson stated, "I guess I don't feel its my place to tell you, but if you ask him, I'm sure he will tell you."

In October 1989, Bearbower sexually assaulted N.W. at his trailer. He later pleaded guilty to criminal sexual conduct.

Appellants commenced this action alleging the Andersons negligently failed to warn them that Bearbower was a convicted child molester. Because of this negligent conduct, appellants argue N.W. was sexually assaulted. The trial court granted the Andersons' motion for summary judgment, concluding the harm was not foreseeable and thus the Andersons had no duty to warn appellants of Bearbower's dangerous propensities. This appeal followed.

## ISSUE

Did the trial court err in determining the sexual assault was not foreseeable and thus respondents did not have a duty to warn appellants that Bearbower was a convicted child molester?

## ANALYSIS

On appeal from a summary judgment, the reviewing court determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). The facts must be viewed in the light most favorable to the party against whom the motion was granted. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

The existence of a legal duty is generally an issue for the court to determine as a matter of law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985). At common law a person owed no duty to warn those endangered by the conduct of another. *Cairl v. State*, 323 N.W.2d 20, 25 n. 7 (Minn.1982) (citing Restatement (Second) of Torts § 314, comment c (1965)). Case law, however, has carved out an exception to this rule where a defendant stands in some special relationship to either the person whose conduct needs to be controlled or to the foreseeable victim of that conduct. *Cairl*, 323 N.W.2d at 25 n. 7.

The trial court determined the requisite special relationship did not exist in this

case. The court, however, granted summary judgment on the basis that the harm was not foreseeable to appellants. Because we believe the trial court correctly determined the harm was not foreseeable, we decline to reach the special relationship issue.

The issue in this case is whether the criminal sexual act by Bearbower was sufficiently foreseeable to impose a duty to warn on the Andersons. *See Larson,* 373 N.W.2d at 289. Foreseeability has been called the fundamental basis of the law of negligence. *Lundgren v. Fultz,* 354 N.W.2d 25, 28 (Minn.1984). Justice Cardozo expressed the central relationship between the foreseeability of harm and the existence of a legal duty, stating "[t]he risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928).

In this case, the following facts exist which may have made the sexual assault foreseeable: the Andersons knew Bearbower was a convicted sex offender for an offense against a young female child; the Andersons knew that when appellants moved onto the farm, Bearbower was still on probation for the sex offense; the Andersons knew appellants' family included young children; the Andersons knew Bearbower raised rabbits near the trailer which attracted the children; and the Andersons never advised appellants that Bearbower had a history of sexual misconduct against children.

A duty to warn against the sociopathic and unpredictable conduct of a criminal does not lend itself easily to an ascertainable standard of foreseeability uncorrupted by hindsight nor to a determination of causation that avoids speculation. Thus the supreme court has developed a rather rigid standard determining a duty to warn exists "only when specific threats are made against specific victims." *Cairl,* 323 N.W.2d at 26.

We believe *Cairl* is controlling under these facts. In *Cairl,* the plaintiffs brought an action against several government agencies alleging breach of a duty to warn them of the dangerous proclivities of a mentally retarded, pyromaniac youth released from a state institution on home leave. While on leave, the youth set fire to his mother's apartment building killing one tenant and damaging the rest of the building. The supreme court held that because the youth had not threatened a specific plaintiff, no duty to warn arose. *Id.*

The court reasoned the youth did not pose a danger to the plaintiffs different from the danger he posed to any member of the public with whom he might be in contact when seized with the urge to start a fire. *Id.* The court also rejected the plaintiffs' argument that they were exposed to a greater risk because they had more frequent contact with the youth than the general public. *Id.* at 26, n. 9. The court stated the duty to warn "is not owed to statistically probable victims, but rather to specifically targeted victims." *Id.*

There is no evidence or allegations in this case that Bearbower ever made a specific threat against N.W. Thus under the standards set forth in *Cairl,* we must hold, as matter of law, that the Andersons were under no duty to warn appellants of Bearbower's previous sexual misconduct against children.

We note that this is an extremely tortious case and we are troubled by the decision we are required to make. The harm to N.W. may have been prevented by the Andersons had they simply warned appellants about Bearbower. We believe the risk to N.W. was not so speculative that, as matter of law, the Andersons were under no duty to warn appellants of Bearbower's dangerous propensities. Yet under the rule set forth in *Cairl*—that there must be a specific threat against a specific victim— we are compelled to hold the Andersons had no duty to warn appellants.

We believe the standard set forth in *Cairl* does not comport with reality or the facts of this case. It would be a rare case where a child molester would make a specific threat against a specific victim. Nevertheless, the indication of impending danger or harm may be so great, that a duty to warn should be imposed on those

who could reasonably prevent the harm from occurring.

Except for the restrictive language in *Cairl,* we feel the danger to N.W. was so compelling or foreseeable, that the Andersons may have had a duty to warn appellants of Bearbower's dangerous proclivities. Close questions on foreseeability should be given to a jury. *Lundgren,* 354 N.W.2d at 29. Thus the foreseeability issue should more properly be determined by a jury. However, unless the supreme court chooses to reexamine the standards for determining whether there is a duty to warn, then we have no choice but to uphold the dismissal of this type of case.

### DECISION

The trial court properly determined that the harm to N.W. was not foreseeable. Therefore, the court correctly held the Andersons did not have a duty to warn appellants of Bearbower's dangerous propensities.

Affirmed.